IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| MORRIS TUCKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 2:23cv63-MHT |
| | ) | (WO) |
| UNITED STATES OF AMERICA, | ) | |
| d/b/a United States | ) | |
| Postal Service, | ) | |
| | ) | |
| Defendant. | ) | |

OPINION AND ORDER

This lawsuit stems from an accident in which a U.S. Postal Service (USPS) truck hit and injured plaintiff Morris Tucker while he was riding a bicycle. Tucker seeks to recover damages from defendant United States of America under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2671-2680. The government moves to dismiss Tucker's lawsuit for lack of subject-matter jurisdiction based on two theories. It argues, first, that Tucker 'settled' his claim. Second, it argues that it has not 'finally denied' Tucker's claim. For the following

reasons, the motion will be denied.

# I. LEGAL STANDARD

"The United States is generally immune from suit unless Congress explicitly waives the government's immunity." Koletas v. United States, 159 F.4th 813, 817 (11th Cir. 2025). "In the FTCA, Congress waived the United States' sovereign immunity for claims arising out of torts committed by federal employees." Ali v. Fed. Bureau of Prisons, 552 U.S. 214, 217–18 (2008). The government contends that this court lacks subject-matter jurisdiction over Tucker's lawsuit because he cannot recover under the FTCA and thus his suit falls outside the waiver of sovereign immunity. The government seeks dismissal under Federal Rule of Civil Procedure 12(b)(1).

There are two types of subject-matter-jurisdiction attacks under Rule 12(b)(1): facial attacks and factual attacks. When a defendant makes a facial attack on jurisdiction, the court reviews the complaint to

determine whether the plaintiff has sufficiently alleged a basis for subject-matter jurisdiction. *See Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990). In contrast, when a defendant makes a factual attack, the court must determine "the existence of subject matter jurisdiction in fact, irrespective of the pleadings," and "matters outside the pleadings, such as testimony and affidavits, are considered." *Id.* (citation omitted).

Here the government brings a factual attack. "In the face of a factual challenge to subject matter jurisdiction, the burden is on the plaintiff to prove that jurisdiction exists." *OSI, Inc. v. United States*, 285 F.3d 947, 951 (11th Cir. 2002).

## II.   BACKGROUND

The court will first provide the factual background leading up to the filing of this lawsuit under the FTCA. The court will then briefly summarize the relevant

structure of the FTCA.

## A. Factual Allegations

On or about January 27, 2020, Tucker was riding a bicycle in Montgomery, Alabama, when a USPS box truck hit him. He suffered "severe and permanent personal injuries" and other permanent and future damages. Complaint (Doc. 1) at 6.

On January 25, 2022, counsel for Tucker submitted an administrative claim for Tucker's injuries to the USPS, along with a cover letter. On the Standard Form 95 ("SF-95")--the vehicle for submitting an FTCA claim to a government agency--his counsel wrote that the total amount in damages was $ 16,460.58 for personal injuries and signed the form. The form contained a line stating: "I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE." Claim (Doc. 15-1) at 1 (capitalization in original). It goes on to say that, "[I] AGREE TO ACCEPT SAID AMOUNT IN FULL

SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM." *Id.* However, in the accompanying cover letter, counsel wrote: "Please see the attached Standard Form 95 attached along with Mr. Tucker's medical records and billing.  Please note that Mr. Tucker has seen additional medical providers and has consistently been treated throughout the end of 2021.  At this time, our office has requested additional medical records and will supplement upon receipt of said records."  January 25 Cover Letter (Doc. 19-1) at 6.

More than six months later, in August 2022, the USPS sent a letter to Tucker's counsel with a check for the full amount requested on his SF-95.  The check was made payable to Tucker and his attorney.  *See* Check (Doc. 19-1) at 8.  The accompanying letter stated that the payment was "in full and final settlement of the claim filed on behalf of the above-referenced claimant."

Settlement Letter (Doc. 15-2).[1]   It further stated: "Pursuant to 28 U.S.C. § 2672 and 39 C.F.R. § 912.14, *acceptance* of this check operates as a complete release and bars recovery of any additional or future claims against the United States, the U.S. Postal Service, or any employee whose act or omission gave rise to the claim by reason of the same subject matter."  *Id.* (emphasis added).  The letter was sent by certified mail and was received by Tucker's counsel on August 30, 2022.  *See* Certified Mail Receipt (Doc. 15-3).  The check was not cashed or returned.

On January 27, 2023, less than five months after receiving the check, Tucker filed this lawsuit.  He now seeks $ 3 million in damages.

---

1. The letter was dated August 9, 2022, but because the check that accompanied the letter was dated August 10, 2022, it is unclear whether the date on the letter was the actual mailing date.  *See* Settlement Letter (Doc. 15-2).  In any event, the statute of limitations, which turns on the mailing date, is not at issue here.

### B. The FTCA's Relevant Structure

As stated, the government contends that this court lacks subject-matter jurisdiction over Tucker's lawsuit because his suit falls outside the waiver of sovereign immunity in that he cannot recover under the FTCA. Whether this suit can move forward, therefore, turns on whether Tucker may recover under the FTCA.

The FTCA permits the government to be sued for the negligence of its employees under the same circumstances and to the same extent as a private party. The act has both an administrative-exhaustion requirement, set forth in 28 U.S.C. § 2675(a), and a statute of limitations, set forth in 28 U.S.C. § 2401(b). Combined, § 2675(a) and § 2401(b) "act as chronological bookends to an FTCA claim, marking both a date before which a claim may not be filed and a date after which any filing is untimely." *Barnes v. United States,* 776 F.3d 1134, 1139 (10th Cir. 2015). Section 2675(a) "bars claimants from bringing

suit in federal court until they have exhausted their administrative remedies." *McNeil v. United States*, 508 U.S. 106, 113 (1993).    Plaintiffs may meet this requirement in two ways: (1) they may "have their administrative claims finally denied by the relevant federal agency; or (2) if the agency fails to act on their administrative claims within six months of presentment, they may thereafter deem the claims denied, that is, that they may consider that claim as having been constructively denied.  *Barnes,* 776 F.3d. at 1139.

As observed above, while "§ 2675(a)'s exhaustion requirement establishes a date *before* which a claim cannot be filed, § 2401(b)'s limitations period establishes the date *after* which any claim is barred." *Id*. (emphasis in original).    Section 2401(b) provides that, "A tort claim against the United States shall be forever barred unless ... action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim

8

by the agency to which it was presented."  *Id.*

The FTCA authorizes each federal agency to settle administrative claims, and it prevents the filing of lawsuits when the claimant has accepted a settlement. *See* 28 U.S.C. § 2672.  The act provides that, "The acceptance by the claimant of any such award, compromise, or settlement shall be final and conclusive on the claimant, and shall constitute a complete release of any claim against the United States and against the employee of the government whose act or omission gave rise to the claim, by reason of the same subject matter."  *Id.*

## III. DISCUSSION

To rehash some of the critical facts, the record reflects that, on January 27, 2020, Tucker was hit on his bike by a USPS box truck; on January 25, 2022, counsel for Tucker submitted an administrative claim to the USPS; in August 2022, the USPS sent a letter to Tucker with a check for the full amount requested in the claim; and on

9

January 27, 2023, Tucker filed this lawsuit.

As stated, the central question before the court is whether Tucker may recover under the FTCA.   And, as further stated, the government moves to dismiss for two reasons.   It argues, first, that it 'settled' Tucker's claim, and the FTCA bars settled claims.   Second, it argues that Tucker may not sue the government because the USPS has not 'finally denied' his claim, as required by the FTCA.   The court will discuss each argument, in turn.

### A. Settlement as Bar to Suit

The government argues that Tucker "accepted the settlement by retaining the check for a year with no notice that he would not accept the check."   Govt's Mot. to Dis. (Doc. 15) at 4.  And the cover letter accompanying the check stated: "Pursuant to 28 U.S.C. § 2672 and 39 C.F.R. § 912.14, acceptance of this check operates as a complete release and bars recovery of any additional or future claims against the United States."   Settlement

Letter (Doc. 15-2).

As support for its contention, the government points to a variety of federal cases in which FTCA lawsuits were dismissed because the plaintiffs were found to have accepted the government's settlement offer. *See* Mot. to Dismiss (Doc. 15) at 5-6 (citing, e.g., *Schwarder v. United States*, 974 F.2d 1118, 1124 (9th Cir. 1992)).[2] The court finds these cases distinguishable because, in each such case, the plaintiff cashed the check from the government and, thereby, provided a clear indication of accepting the settlement offer.[3]   Here, in contrast,

---

2.   The government further cites *Ziler v. USA*, No. 6:21-CV-01697, 2022 WL 2390045, at *1 (W.D. La. July 1, 2022) (Summerhays, J.); *Contreras v. United States*, No. 1:19-CV-12870, 2022 WL 970192, at *2 (D.N.J. Mar. 31, 2022) (O'Hearn, J.); *Circelli v. United States*, No. 17-CV-5269, 2018 WL 3000334, at *1 (D.N.J. June 15, 2018) (Wigenton, J.); and *Murphree v. United States*, No. 10-CV-4122, 2011 WL 1980371, at *1 (D. Kan. May 20, 2011) (Brown, J.).

3. The cashing of a check is of particular significance in contract law.   *See, e.g.*, Ala. Code § 7-3-311 (2025) (defining accord and satisfaction by use of a negotiable instrument, and requiring that "the

Tucker did not cash the government's check and therefore did not clearly "accept" the settlement offer.

Anticipating this issue, the government argues that it does not matter to the analysis of acceptance that Tucker did not cash the check.  Before analyzing this argument, the court must determine the law that applies to the question.  The government contends that Alabama law controls.

As an initial matter, the FTCA requires that the government's tendering of the check be viewed as a settlement offer to Tucker.  *See Wiseman v. United States*, 976 F.2d 604, 606 (9th Cir. 1992) ("Because § 2672 requires 'acceptance by the claimant,' filing an administrative claim is not a settlement offer by the claimant, but an invitation to negotiate.").  The FTCA "explicitly vests the power of acceptance in the claimant, and not in the agency. ... [S]ince the statute

---

claimant obtained payment of the instrument" for the provision to apply); U.C.C. § 3-311(a) (2002) (same).

gives the claimant the power of acceptance, an agency's decision to grant the claim is not an acceptance, but an offer." *Odin v. United States*, 656 F.2d 798, 804 (D.C. Cir. 1981). Thus, regardless of which substantive body of law controls this inquiry, the court's analysis must start from this statutory premise.

Claims brought under the FTCA are governed by the substantive law of the State where the injury occurred. *See* 28 U.S.C. § 1346.[4] "[A] reading of the statute as a whole, with due regard to its purpose, requires application of the whole law of the State where the act or omission occurred." *Richards v. United States*, 369 U.S. 1, 11 (1962). That said, it is not entirely clear

---

4. Section 1346 gives district courts jurisdiction "of civil actions on claims against the United States, for money damages ... for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, *under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.*" (Emphasis added.)

whether the statute's reference to substantive law refers to only the state law relevant to the cause of action or also refers to state law regarding whether a settlement offer has been accepted.

The Eleventh Circuit Court of Appeals has not decided whether state or federal law applies in an FTCA case to whether a plaintiff accepted a settlement by retention of a check.  However, the appellate court has expressed a general reluctance to rely on federal common law except in limited settings.  *See Resnick v. Uccello Immobilien GMBH, Inc.*, 227 F.3d 1347, 1350 n. 4 (11th Cir. 2000).[5]

Moreover, several courts have applied state law in the FTCA context to decide related issues.  *See, e.g., Reo v. U.S. Postal Serv.*, 98 F.3d 73, 76 (3d Cir. 1996) ("The basic purpose of the FTCA is to subject the United

---

5. In *Resnick*, the court stated: "We generally disfavor federal common law and apply it in only rare instances concerning rights and obligation of the United States, interstate and international disputes implicating the conflicting rights of States or our relations with foreign nations, and admiralty cases." 227 F.3d at 1350 n. 4 (quotation and citation omitted).

States to tort liability under state law to the same extent as private individuals. State law thus governs both the creation of liability and the effect of a purported release of liability.").[6]  For these reasons, the court will apply Alabama law to decide whether Tucker accepted the settlement offer by retaining the check without cashing it.

---

6.  *See also Schwarder v. United States*, 974 F.2d 1118, 1124 (9th Cir. 1992) (applying state law to determine the impact of an FTCA settlement on a non-settling party, but "conclud[ing], as a matter of federal law, that an administrative settlement reached pursuant to section 2672 bars further claims by the settling party, without regard to the effect it would have as a matter of state law ... [because] [s]uch a construction gives meaning to all of section 2672, and effectuates the apparent Congressional intent to provide a uniform procedure, independent of underlying state law, by which the government can settle tort claims against it"); *Green v. United States*, 709 F.2d 1158, 1165 (7th Cir. 1983) ("[T]he effect of a release from liability must be determined according to that state's law.") (citation omitted); *Rushford v. United States*, 204 F.2d 831, 832 (2d Cir. 1953) ("[I]t is plain that Congress meant to make the proper state law in all respects the model for the liabilities it consented to accept; and that the 'circumstances' included as much those facts that would release a liability once arisen, as those on which its creation depended.").

The government cites one Alabama case dealing with the doctrine of accord and satisfaction to argue that Tucker held onto the check for an unreasonable amount of time and thus treated it as a full settlement: *Craft v. Standard Accident Ins. Co.*, 123 So. 265, 270 (Ala. Ct. App. 1928), *rev'd and remanded by Craft*, 123 So. 271, 274 (Ala. 1929).  Under Alabama law, "[a] valid accord and satisfaction is premised upon there being an express or implied contract between the parties."  *Bank Indep. v. Byars*, 538 So. 2d 432, 435 (Ala. 1988).  "[I]n order for there to be a valid accord and satisfaction, there must be (1) proper subject matter; (2) competent parties; (3) assent or meeting of the minds; and (4) consideration."  *Id.* (citations omitted).

"[A meeting of the minds] is not a determination of law, but one of fact, based upon the evidence presented."  *Ray v. Alabama Cent. Credit Union*, 472 So. 2d 1012, 1014 (Ala. 1985).  "Generally speaking an offeree has a right to make no reply to offers, and his silence and inaction

16

cannot be construed as an assent to the offer." *Brunswick Corp. v. Sittason*, 277 Ala. 45 (Ala. 1964) (quotations omitted).  There are exceptions to this general contract rule.  Previous dealings between the parties, the offeree's conduct, or an extended retention of goods or services without objection can indicate acceptance.  *See id*. at 47.  The *Sittason* court stated that "silence gives consent in these cases only when there is a duty to speak."  *Id*. (quotation omitted).

In *Craft*, the case cited by the government, an Alabama appeals court found that a party had accepted a check in full accord and satisfaction of a claim, reasoning that, under certain circumstances, retaining a settlement check "for an unreasonable time will amount to an election to treat the payment as a full settlement." *Craft*, 123 So. at 270.[7]  Notably, on appeal, the Alabama

---

7.  In citing the Alabama Court of Appeals' *Craft* decision in its motion, the government described the Alabama Supreme Court's subsequent decision as a reversal "on other grounds."  *See* Mot. to Dismiss (Doc. 15-1) at 7.  The court is not sure whether this description is

Supreme Court reversed the court of appeals, including on its finding of accord and satisfaction, explaining that, "[t]he mere retention of an uncertified personal check purporting to be issued in full satisfaction of a disputed demand, where notice is given on its receipt that it will not be received in full satisfaction of the demand, in the absence of the subsequent indorsement and collection, does not, as a matter of law, constitute an acceptance of the check as accord and satisfaction." *Craft*, 123 So. at 274.

These cases guide the court insofar as one sets out a general unreasonable-time standard for acceptance by silence, and the other provides a set of facts in which retention of a check definitely does not amount to accord and satisfaction. However, neither *Craft* opinion makes

---

accurate. The Alabama Supreme Court expressly disagreed with the court below as to its resolution of the accord and satisfaction issue and reversed and remanded the case. However, it did not expressly reject the idea that retaining a settlement check for an unreasonable time can amount to an election to treat the check as a full settlement.

18

clear how long the checks were retained and therefore they offer little guidance as to what counts as an unreasonable time.

Tucker retained the check without cashing it for less than five months before filing suit.[8]  In an effort to elucidate the meaning of "unreasonable time," the government cites several non-Alabama cases in support of its argument.  While none of these cases is binding, the court can consider them as persuasive authority.  However, in none of the cited cases did any court find that retaining a check for less than five months amounts to acceptance.  In one case, a federal court found that an FTCA claimant accepted a USPS settlement offer where the claimant retained the check for more than two years. *Arnold v. United States*, No. 1:21-CV-399-WJ-JFR, 2022 WL 7008294, at *3 (D.N.M. Oct. 12, 2022) (Johnson, C.J.).

---

8. As the government notes, Tucker put the government on notice that he deemed his claim denied in January 2023, when he "filed" the complaint.  Govt. Reply Br. (Doc. 20) at 2.

19

Two years is substantially longer than five months, which alone makes *Arnold* distinguishable from the instant case.[9]

In a footnote, the government also cited cases from other States holding that acceptance occurred when a check was retained for (a) eight years, (b) 18 months, and (c) seven months.  *See* Mot. to Dismiss (Doc. 15) at 7 n. 3.[10]  *Hoffman v. Ralston Purina Co.*, 273 N.W.2d 214 (Wis. 1979), the seven-month case (the only one close

---

9. In *Arnold*, the claimant also failed to return the check despite being told by the USPS that "she must return the check in order to demand an updated settlement offer," an added fact that made retention more akin to assent.  *Id.* at 3.  Here, the USPS did not tell Tucker to return the check.

10.  The government cites *Rosenberg v. Townsend, Rosenberg & Young, Inc.*, 376 N.W.2d 434 (Minn. Ct. App. 1985) (acceptance of settlement offer where check was retained for 18 months without notifying other party that check would not be accepted as payment in full); *Bestor v. Am. Nat'l Stores*, 691 S.W.2d 384 (Mo. Ct. App. 1985) (acceptance where initial check was retained for eight years and subsequent checks were cashed); and *Hoffman v. Ralston Purina Co.*, 273 N.W.2d 214 (Wis. 1979) (acceptance where check was retained for seven months, with silence).

enough to the time period in this case to warrant closer examination), is distinguishable: the court based its finding of accord and satisfaction on not only the offeree's retention of a check for that period of time but also the offeree's retention of an accompanying credit memorandum and acceptance "without objection [of] the fruits of that credit memorandum[--]the cancellation of his existing indebtedness." *Id.* at 218-19. Tucker, in contrast, accepted no additional benefit from the government that would support a finding that he accepted the government's offer. And the government concedes that he gave notice that he would not accept the check when he filed suit. *See* Govt. Reply Br. (Doc. 20) at 2 ("Mr. Tucker did not put the United States on notice that he deemed his claim to be denied until he filed the complaint in January 2023.").

The court concludes that retaining the government's settlement offer for less than five months before filing suit--thereby putting the government on notice that the

check would not be accepted--does not, by itself, amount to Tucker's accepting of the check as an accord and satisfaction of his tort claim under Alabama law. Further, while Tucker did not supplement his claim with additional medical bills before the government sent the check, his attorney did put the government on notice from the outset that the amount Tucker requested on his SF-95 did not encompass the full amount of his damages--in particular, bills. Thus, the government knew at the time it sent the check that the amount was likely insufficient from plaintiff's perspective. Under these circumstances, the court cannot conclude that the government obtained Tucker's acceptance of its settlement offer through accord and satisfaction.

Finally, at the end of its acceptance argument, the government briefly argues that the court lacks jurisdiction because the case was settled for the maximum amount Tucker could receive in court. It contends that 28 U.S.C. § 2675(b)--which states, in part, that, "Action

under this section shall not be instituted for any sum in excess of the amount of the claim presented to the federal agency"--robs the court of jurisdiction because Tucker sued for $ 3 million while his administrative claim listed his damages as $ 16,460.58.

The government's argument depends in large part on ignoring the language that follows the quoted part of § 2675(b). The full provision allows FTCA cases to be brought for more than the amount requested in the administrative claim "where the increased amount is based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency, or upon allegation and proof of intervening facts, relating to the amount of the claim." 28 U.S.C. § 2675(b). The applicability of this provision cannot be resolved at this early stage of the case. *See Rudd v. United States*, 233 F. Supp. 730, 734 (M.D. Ala. 1964) (Johnson, J.) ("The application of this rule of 'limitation of liability' does not require the dismissal

23

of plaintiffs' claims. In such instances, the courts have held that the limitation is merely upon the amount recoverable.") (collecting cases).  The government may reassert this defense on summary judgment or thereafter. *See generally Frazier v. United States*, 766 F.2d 478 (11th Cir. 1985) (applying § 2675(b) after trial).  That said, the amount Tucker may recover in this case appears likely to be significantly limited by § 2675(b).

Having found that Tucker did not accept the government's settlement offer, the court turns to the government's second argument--that Tucker has not met the prerequisites laid out in 28 U.S.C. § 2675(a).

### B. Exhaustion as a Bar to Suit

"The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies."  *McNeil v. United States,* 508 U.S. 106, 113 (1993).  As stated, there are two ways for a claimant to exhaust his administrative remedies:

24

concretely or constructively. 28 U.S.C. § 2675(a) provides that the plaintiff must have "first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency *in writing* and sent by certified or registered mail." (Emphasis added.) But a formal written denial is not the only way a claim can be denied: § 2675(a) further provides that, "The failure of an agency to make final disposition of a claim within six months after it is filed shall, *at the option of the claimant any time thereafter, be deemed* a final denial of the claim for purposes of this section." *Id.* (emphasis added). In other words, "to meet the threshold requirement of administrative exhaustion, plaintiffs must either (1) have their administrative claims finally denied by the relevant federal agency; or (2) if the agency fails to act on their administrative claims within six months of presentment, they may thereafter deem the claims (constructively) denied."

25

*Dotson v. U.S.*, 30 F.4th 1259, 1266 (11th Cir. 2022) (quotation omitted).

To rehash some of the critical facts, the record reflects that, on January 27, 2020, Tucker was hit on his bike by a USPS box truck; on January 25, 2022, counsel for Tucker submitted an administrative claim to the USPS; in August 2022, the USPS sent a letter to Tucker with a check for the full amount requested in the claim; and, on January 27, 2023, Tucker filed this lawsuit.

The specific issue here is whether an agency's issuance and offer of a check for the full amount claimed on the SF-95--after six months without a final disposition--eliminates his statutory right to deem his claim denied and file suit. Or to put it another way, does an unaccepted offer do so? For the reasons below, the answer to this question is no.

While § 2675(a) mandates that a claimant who has submitted an administrative claim wait either to receive a denial from the agency or until six months have passed

26

from filing the claim before filing suit, there is nothing in the FTCA to require the claimant to engage in the administrative process beyond these baseline presentment requirements. *See Adams v. United States*, 615 F.2d 284, 291-92 (5th Cir. 1980) ("A claimant's refusal to settle his or her claim will not deprive the federal court of jurisdiction, if the claimant has provided the statutorily required notice. Although many claimants will rationally elect to settle their claims, Congress clearly did not deem settlement mandatory.") (footnotes omitted), *decision clarified on denial of reh'g*, 622 F.2d 197 (5th Cir. 1980).[11] "A federal court's power to adjudicate a tort claim brought against the United States depends solely on whether the claimant has previously complied with the minimal requirements of the statute. Federal court power does not depend on whether

---

11. In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

a claimant has successfully navigated his or her way through the gauntlet of the administrative settlement process ... ." *Id.* at 292 (citing 28 U.S.C. § 2675(a)).

The government argues that this suit must be dismissed because the USPS did not finally deny Tucker's claim. In response, Tucker argues that, because the agency did not finally dispose of his claim within six months after filing, he had the option "at any time thereafter" to deem the claim finally denied, 28 U.S.C. § 2675(a), which he did. To resolve the issue in this case, the court must first determine what this statutory language means.

### 1. Statutory Interpretation

When interpreting a statute, "the first step is to determine whether the statutory language has a plain and unambiguous meaning by referring to 'the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.'" *Bautista*

28

*v. Star Cruises*, 396 F.3d 1289, 1295 (11th Cir. 2005) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)).  The Supreme Court has repeatedly emphasized, in its current jurisprudence, that courts interpreting statutes should rely on a statute's plain language when the meaning of such language is clear, rather than turning to legislative history, speculation about what Congress might have intended, or policy arguments.  *See Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 815 (2024).  "The statutory-interpretation inquiry ceases if the language is clear and 'the statutory scheme is coherent and consistent.'"  *Bautista*, 396 F.3d at 1295 (quoting *Robinson*, 519 U.S. at 340).

Starting with the statutory language, 28 U.S.C. § 2675(a) provides that, "The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant *any time thereafter*, be deemed a final denial of the claim for purposes of this section."  (Emphasis added.)  The

29

Supreme Court has "repeatedly explained that the word 'any' has an expansive meaning. ... The standard dictionary definition of 'any' is [s]ome, regardless of quantity or number." *Babb v. Wilkie*, 589 U.S. 399, 405 n.2 (2020) (citations and quotations omitted). The most natural reading of the plain language is that, once six months pass without agency action, a claimant has the option to deem his claim denied whenever he chooses--unless some other provision cabins the time.[12]

Moving to the context of the language, the phrase at issue sits in 28 U.S.C. § 2675, which addresses the impact of the administrative process on subsequent litigation. The statute (1) sets the administrative-exhaustion requirement (§ 2675(a)), (2) constrains the damages that can be awarded in a lawsuit

---

12. "Section 2675(a) expressly states that a claim may be deemed denied only 'for purposes of this section.' Thus, a 'deemed' final denial under section 2675(a) has no effect beyond what is stated in *that* section." *Lehman v. United States*, 154 F.3d 1010, 1014 (9th Cir. 1998) (emphasis in original).

to the amount requested in the administrative process, with limited exceptions, (§ 2675(b)), and (3) restricts the use, in a lawsuit, of any disposition in the administrative process by the Attorney General or an agency as evidence of liability or amount of damages (§ 2675(c)).

Subsection (a) of § 2675, thus, acts as an initial hurdle that, once overcome, allows a claimant to bring suit.  *See McNeil v. United States*, 508 U.S. 106, 112 ("The most natural reading of [§ 2675(a)] indicates that Congress intended to require complete exhaustion of Executive remedies before invocation of the judicial process.").  It is narrowly concerned with exiting the administrative arena and moving to the judicial arena. When drafting the 1966 amendments to the FTCA, Congress had to decide how long it wanted claims to remain with an agency, and it decided on six months.  And in doing so, it did not further constrain the deemed-denial option

by eliminating it if the agency acted after six months but before suit.

Third and finally, the court looks to the broader context of the FTCA as a whole.  One tool of statutory interpretation involves looking at other uses of contested language in a statute.  The phrase at issue here--"at the option of the claimant any time thereafter"--does not arise elsewhere in the statutory scheme, and thus other instances are unavailable to aid in the interpretation of this phrase in § 2675(a).  Moreover, "[s]ection 2675(a) expressly states that a claim may be deemed denied only 'for purposes of this section.'  Thus, a 'deemed' final denial under section 2675(a) has no effect beyond what is stated in *that* section."  *Lehman v. United States*, 154 F.3d 1010, 1014 (9th Cir. 1998) (emphasis in original).

The court's interpretation of the phrase is coherent with the rest of the statutory scheme.  It creates no

32

inconsistency or conflict with the other provisions of the statute.

Further, multiple courts have determined that the time to invoke the deemed-denial provision is limited by only a final denial by the agency. *See, e.g., Barnes v. United States*, 776 F.3d 1134, 1140 (10th Cir. 2015) ("[C]ourts are virtually of one mind in ruling that (at least until there has been a final denial by the relevant agency) there is no limit on when a plaintiff may file a lawsuit predicated on a deemed denial." (collecting cases)).[13] With the filing of his lawsuit after his claim

---

13. The FTCA's statute-of-limitations provision, 28 U.S.C. § 2401(b), requires that lawsuits be filed "within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented." Courts have determined that, when an agency does not act within six months but later sends a final denial pursuant to § 2401(b), this statute of limitations supersedes the deemed-denial provision. *See, e.g., Barnes v. United States*, 776 F.3d 1134, 1139 (10th Cir. 2015) ("[T]he six-month limitations period in § 2401(b) is triggered by an agency's formal denial of a potential plaintiff's administrative claims—regardless of whether that plaintiff has filed a claim pursuant to § 2675(a)'s 'deemed denial' provision.").

had been pending for six months, Tucker gave notice that he deemed his claim denied and the filing of his lawsuit is proper.

2.

The government argues, nonetheless, that an agency's issuance of a check as an offer (without acceptance, as explained in detail in an earlier section of this opinion) for the full amount claimed on the initial claim form eliminates the statutory right to deem the claim denied and file suit. The government's argument would require the court to ignore Congress's direction--in the plain language of the statute--that a claimant may deem his claim denied "at any time" after six months has passed without final disposition by the agency. 28 U.S.C § 2675(a). Here, as explained above, the deemed-denied provision's operational timeframe--for purposes of

administrative exhaustion--is limited by only a final denial by the agency.[14]

To be sure, the government may not like the fact that the deemed-denied provision is limited by only a final

---

14. While the Eleventh Circuit Court of Appeals has not been presented with the issue in this case (a suit filed under the deemed-denial provision after six months have passed and after the agency has offered the entire amount written on the SF-95) its predecessor, the former Fifth Circuit Court of Appeals, has laid out in binding law, *see supra* note 12, the minimal requirements of § 2675(a) and has never said that the deemed denial under § 2675(a) is limited by subsequent agency action. *See Adams v. United States*, 615 F.2d 284, 289–90 (5th Cir. 1980) (holding that proper presentment of a claim "alone allows the claimant to maintain a subsequent action in the district court following the denial of his or her claim by the agency or the passage of six months"), *decision clarified on denial of reh'g,* 622 F.2d 197 (5th Cir. 1980)*; see also Free v. United States*, 885 F.2d 840, 842 (11th Cir. 1989) (stating, in the context of a dispute regarding presentment of a claim, that "[o]nce the claim has been denied or six months after the claim has been filed, a plaintiff may bring a lawsuit in federal court"); *Turner ex rel. Turner v. United States*, 514 F.3d 1194, 1200 (11th Cir. 2008) (stating, in circumstances where multiple administrative claims had been filed and only one of them had been pending for longer than six months, that "[b]efore instituting a federal suit, the claimant must wait either until the administrative agency finally denies the claim or until at least six months have passed after the claim was filed").

denial by the agency. However, "even the most formidable policy arguments cannot overcome a clear statutory directive." *BP P.L.C.*, 593 U.S. at 245 (quotation omitted). A court's "task is to discern and apply the law's plain meaning as faithfully as [it] can, not to assess the consequences of each approach and adopt the one that produces the least mischief." *Id*. (quotation omitted). Applying that approach here, the court finds that the plain meaning of the statute allows Tucker's claim to move forward, because he properly exercised his option to deem his claim denied pursuant to § 2675(a) at a time after six months of USPS inaction.[15] The

---

15. Two courts, *Lehman v. United States*, 154 F.3d 1010, 1015 (9th Cir. 1998), and *Conn v. United States*, 867 F.2d 916, 920 (6th Cir. 1989), characterized *Miller v. United States*, 741 F.2d 148, 150 (7th Cir. 1984), as holding that an FTCA action must be filed within a "reasonable time" after the six-month review period expires. However, *Miller* mentioned "reasonable time" only in passing; there was not basis, in a stature or case law, given for it; and the phrase was not critical to the holding. But, in any event, Tucker filed his lawsuit within a "reasonable time" after the six-month review period expired.

government's unaccepted offer did not eliminate this option.

***

Accordingly, it is ORDERED that defendant United States of America's motion to dismiss (Doc. 15) is denied.

DONE, this the 28th day of July, 2026.

/s/ Myron H. Thompson
**UNITED STATES DISTRICT JUDGE**